379 S.E.2d 497

**STATE of West Virginia**

v.

**Anthony D. MARRS.**

No. 18423.

Supreme Court of Appeals of West Virginia.

April 6, 1989.

694

Debra Archer, Bayless, Wills and Archer, Princeton, for Anthony D. Marrs.

Brenda Craig Ellis, Asst. Atty. Gen., Charleston, for the State.

NEELY, Justice:

Appellant, a black man, was convicted by a jury on two counts of selling marijuana to undercover police officers. The prosecution's witnesses were four police officers and one informant, all of whom were white. The jury venire contained two blacks, one of whom was struck for cause because he was a neighbor and former teacher of defendant. The prosecution's evidence consisted of testimony from the officers and the informant who bought a total of eight marijuana cigarettes from a black male in the city of Bluefield. The prosecution exercised a peremptory strike against Paul Kelsor, the sole black person remaining on the jury venire.

The prosecuting attorney offered the following explanation for striking Mr. Kelsor:

I noticed on the bench warrants that we have a Kelsor. It's an unusual name, and I didn't know whether they were related, and I hesitated to question him about any allegations and if he was related to someone who had a criminal charge against them. I would prefer not to have him on this jury, so I struck him.

The defense argued mistaken identity, pointing out that both drug purchases were made in a matter of minutes, at night, by witnesses who remained in their vehicles during the purchases. On cross-examination, defense counsel elicited that several of the officers were passing around a photograph of the defendant just before trial. The defense also called as a witness the defendant's brother, whose build fit the description given by the police officers.

In addition to arguing mistaken identity, the defense called several neighbors and friends of the defendant as character witnesses. Defense counsel asked one of these witnesses about the defendant's reputation for selling drugs and the court sustained the prosecutor's objection to the question on the grounds that it did not concern a character trait. Defense counsel was allowed to ask the character witness about the defendant's reputation for truth, honesty, and being a lawabiding citizen. The defendant took the stand and denied selling drugs. The jury convicted the defendant on both counts of selling marijuana and he was sentenced to two concurrent terms of one to five years.

■ Defendant argues that the state's use of its peremptory strike to remove the only black person remaining on the jury panel denied him equal protection in violation of the Fourteenth Amendment to the U.S. *Constitution*. Defendant also argues that the trial court erred when he refused to allow defense counsel to question the

character witness about defendant's reputation for selling drugs. Although defendant assigns and argues other errors, it is unnecessary to address them because we find merit in defendant's equal protection argument, reverse his conviction, and grant him a new trial. We address defendant's assignment of error to the trial court's character evidence ruling to guide courts in future cases.

## I

In *Strauder v. West Virginia*, 100 U.S. 303, 25 L.Ed. 664 (1880), the U.S. Supreme Court held that a State denies a black defendant equal protection when it puts him on trial before a jury from which members of his race have been purposefully excluded. In *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), the Court held that to establish such a violation, the defendant could not rely solely on the State's use of peremptory strikes, but must demonstrate systematic exclusion of blacks in a number of cases. Recently, however, in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the U.S. Supreme Court rejected the "crippling burden of proof" that *Swain* imposes on defendants.

In *Batson*, the prosecutor used his peremptory strikes to remove all four blacks from the venire, resulting in an all white jury. Defendant moved to discharge the jury and the judge denied the motion stating that the parties are entitled to use their peremptory challenges to "strike anybody they want to." The Supreme Court reversed defendant's conviction, established a new standard for proving a violation of equal protection in the use of peremptory jury challenges, and remanded the case to determine whether defendant met the new standard.

Under *Batson, supra*, a defendant must first make a prima facie case of purposeful racial discrimination in the selection of jurors. This prima facie case consists of three elements:

To establish such a case, the defendant first must show that he is a member of a cognizable racial group, *Castaneda v. Partida, supra* [430 U.S. 482] at 494 [97 S.Ct. 1272 at 1280, 51 L.Ed.2d 498 (1977)], and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." *Avery v. Georgia*, 345 U.S., [559] at 562 [73 S.Ct. 891 at 892, 97 L.Ed. 1244 (1953)]. Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.

476 U.S. at 96, 106 S.Ct. at 1723. Once the defendant makes this prima facie case, the State must come forward with a neutral explanation for striking minority jurors.

■ In the case before us, we find that the defendant has made a showing sufficient to require a satisfactory, non-racial reason for striking Mr. Kelsor. The prosecuting attorney's stated reason for striking Mr. Kelsor was that she believed she saw the same last name, which is an unusual one, on a bench warrant. Presumably, she did not want someone on the jury who was related to someone charged with a crime. She also stated that she hesitated to ask Mr. Kelsor if he was related to someone who had a criminal charge against him. However, if this were the prosecuting attorney's true reason for striking Mr. Kelsor, she could have asked him whether he or a relative of his had a criminal warrant pending against him, or she could have asked the entire jury panel if any of them was related to someone with criminal charges pending against him.

■ If we are to give real effect to the U.S. Supreme Court's decision in *Batson*, we must require the State in cases such as this to give a non-racial, *credible* justification for striking the only member of defendant's race from the panel. In *Batson*, the U.S. Supreme Court stated:

Nor may the prosecutor rebut the defendant's case merely by denying that he had a discriminatory motive or "affirm[ing] [his] good faith in making individual selections." *Alexander v. Louisiana,* 405 U.S., [625] at 632 [92 S.Ct. 1221 at 1226, 31 L.Ed.2d 536 (1972)]. If these general assertions were accepted as rebutting a defendant's prima facie case, the Equal Protection Clause "would be but a vain and illusory requirement." [Citation Omitted]

*Id* 476 U.S. at 98, 106 S.Ct. at 1723.

■ The State points out that defendant did not object to the prosecuting attorney's use of her peremptory strike until after the jury was sworn and instructed by the Court. The State argues that, therefore, defendant did not preserve the error for appeal. Under *W.V.R.Crim.P.* 52, we may take notice of plain errors affecting substantial rights. We have previously pointed out that the plain error doctrine should be sparingly used and reserved for cases where "a miscarriage of justice would result if this Court did not consider and correct the error despite the absence of an objection." *State v. Fisher,* 179 W.Va. 519, 370 S.E.2d 480 at 483 (1988). We find the case before us to be an appropriate one for the application of the plain error doctrine. There was a serious conflict in the evidence about the identity of the perpetrator, the resolution of which might have been different with the presence of a black person on the jury.

## II

■ Appellant also asserts that the trial court committed error when he refused to allow defense counsel to question a character witness about appellant's reputation for selling drugs. The prosecuting attorney argued, and the trial court agreed, that such evidence was not admissible under Rule 404, *W.Va.R.Evid.* because it does not pertain to a "character trait." Rule 404 generally disallows the use of character evidence to prove that a person acted in conformance with his character unless the evidence satisfies one of the delineated exceptions. Subsection (a)(1) allows an ac-

cused to present "[e]vidence of a pertinent trait of his character," and also allows the prosecutor to use character evidence on rebuttal. It is clear that one's reputation for selling illegal drugs is pertinent in a prosecution for selling illegal drugs. The question presented is whether this evidence refers to a trait of character.

Unfortunately, neither the *Rules* nor any authoritative case offers a satisfactory definition of character. One learned commentator offers a definition that distinguishes "character" from "habit:"

Character is a generalized description of a person's disposition, or of the disposition in respect to a general trait, such as honesty, temperance or peacefulness. Habit, in the present context, is more specific. It denotes one's regular response to a repeated question.

*McCormick On Evidence* § 195 (3rd ed. 1984) at 574–75. This definition suggests that selling drugs is behavior that is too specific to be classified as a character trait.

*W.Va.R.Evid.* 404 codifies the common law rules on the admission of character evidence. *State v. Welker,* 178 W.Va. 47, 357 S.E.2d 240 (1987). Therefore, cases decided before the rule are good authority for its interpretation and appellant argues that *State v. Padgett,* 93 W.Va. 623, 117 S.E. 493 (1923) supports his position. The defendant in *Padgett, supra,* was charged with violating the prohibition laws by operating a still. The trial court refused to allow defendant's character witnesses to testify concerning defendant's reputation for being a law-abiding citizen. This Court held that such evidence was admissible and granted defendant a new trial:

We think the court should have permitted defendant to show to the jury that his reputation as a law-abiding citizen was good. The evidence was largely circumstantial. Did he have the reputation of being a violator of the prohibition laws? If so, the state would have been permitted to show that reputation. He had opened the door for such evidence. [Citations Omitted]

117 S.E. at 495. Although this quotation, and other *dicta* in the case might be inter-

preted to support appellant's position, the defendant in *Padgett* never sought to introduce evidence that he had a reputation for obeying the prohibition laws. In the case before us, appellant was allowed to introduce exactly the same evidence that this Court held admissible in *Padgett*—evidence of a reputation as a law-abiding citizen.

We find only two cases that have directly addressed the question now before us, and in both of them, the courts held that the evidence was inadmissible. In *Hack v. United States*, 445 A.2d 634 (D.C.1982) the defendant appealed his conviction for drug possession to the District of Columbia Court of Appeals arguing that the trial court should have allowed him to introduce evidence of his reputation for non-use or non-sale of drugs. The court provides a brief but comprehensive discussion of character evidence and the countervailing policies that determine its selective admissibility. The court cites Wigmore, *Evidence* for the proposition that "[t]hose 'character traits' which are admissible are abstract qualities which reflect one's general and permanent moral character, such as honesty, veracity, peacefulness, or a law-abiding nature." 445 A.2d at 642. Rejecting defendant's argument, the court stated:

> Appellant urges us that evidence of his non-use (or non-sale) of drugs should have been admitted through witnesses who could testify to his reputation for not using (or selling) drugs. Even if witnesses could testify that appellant had such a reputation, this testimony does not reveal a characteristic quality of the appellant, but rather describes the knowledge of others that appellant has not committed certain acts in the past. To allow this testimony would likely obscure the true issues; rather than contributing to a determination of whether appellant possessed the drugs involved, the jury's attention instead would be directed toward a determination of whether appellant uses drugs. We thus conclude that there was no error in the trial court's decision to exclude such testimony. [footnote omitted]

*Id.* at 643.

In *People v. Berge*, 103 A.D.2d 1041, 478 N.Y.S.2d 433 (1984), the Supreme Court of New York also held such evidence inadmissible:

> The proper method of proving character is by testimony of defendant's reputation in the community for the particular trait relating to and controverting the crime charged, such as honesty, veracity, peacefulness, or a lawabiding nature, not his reputation for committing the specific act constituting the crime. [Citations omitted]

478 N.Y.S.2d at 434.

We agree with the courts that have previously addressed this question and hold that in a prosecution for the sale of illegal drugs, the reputation of the defendant for not selling illegal drugs is not admissible character evidence under Rule 404, *W. Va. R.Evid.*

For the reasons set forth above, the judgment of the circuit court is reversed and the case is remanded for a new trial.

Reversed and Remanded.