432 S.E.2d 93

**STATE of West Virginia, Appellee,**

v.

**Sean Romane HARRIS, Appellant.**

**No. 21400.**

Supreme Court of Appeals of West Virginia.

Submitted May 5, 1993.

Decided June 9, 1993.

---

Darrell V. McGraw, Jr., Atty. Gen., Charleston, for appellee.

McGinnis E. Hatfield, Jr., Roahrig & Hatfield, Princeton, for appellant.

NEELY, Justice:

"The Constitution is color-blind, and neither knows nor tolerates classes among its people." *Plessy v. Ferguson,* 163 U.S. 537, 559, 16 S.Ct. 1138, 1146, 41 L.Ed. 256 (1896) (Harlan, J., dissenting). The Equal Protection Clause of the Fourteenth Amendment guarantees Justice Harlan's vision of a color-blind *Constitution* to all citizens of the United States. With *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the U.S. Supreme Court significantly extended the applicability of the Equal Protection Clause to the state's use of peremptory challenges in a criminal case. We applied the *Batson* rule to West Virginia in *State v. Marrs,* 180 W.Va. 693, 379 S.E.2d 497 (1989). The trial of Sean Romaine Harris, appellant in the case before us, was tainted by the circuit court's failure to ask the prosecutor to state on the record a nondiscriminatory reason for the prosecution's peremptory strike of a black juror after the defendant raised an appropriate objection. Accordingly we reverse his conviction and remand for a new trial.

 Appellant was convicted by a jury of one count of sexual assault in the first degree and one count of sexual assault in the second degree on 15 March 1991. Appellant was sentenced to serve between six months and two years in a forestry camp for youthful offenders. Appellant assigns several errors from the trial, but the taint of the constitutional violation requires reversal; therefore, we need not address the other errors.[1]

 The defense twice raised the question of the racial composition of the jury. After two black jurors were struck from the venire on the prosecutor's motion, defense counsel objected, stating:

MR. COLOSI: I'd like the record to reflect that Inez Younger is a black woman and Harold Scott is a black man and that the Prosecutor has moved for both of these individuals to be excused. Of course, they have been excused. Also, I'd like the record to reflect that Harold Scott is the only black man on the panel and that we're getting to the point now where the de— Of course, the defendant here is black, and we're getting to the point where there's a danger of Sean Harris not being granted his Constitutional right to a trial by a jury of his peers. I think that there is a, not a

---

1. Although the *Batson* issue was not fully briefed, we are permitted by *W.V.R.Crim.P.* 52(b) to take notice of plain errors affecting substantial rights. Although it is true that this power should be used sparingly (*See, State v. Fisher,* 179 W.Va. 516, 370 S.E.2d 480 (1988)), an important constitutional right is at stake; therefore, this is a proper instance for the application of the plain error doctrine. *See State v. Marrs,* 180 W.Va. 693, 696, 379 S.E.2d 497, 500 (1989).

representative amount of black people on this jury panel and I'd like to note that for the record.

Trial Transcript at 18. After the circuit court noted defense counsel's objection, the court moved on to call more jurors without further comment. However, after the prosecutor struck another black prospective juror peremptorily, defense counsel again objected and moved to discharge the jury:

> MR. COLOSI: Your Honor, I've told the Court before about my concern about the representative makeup of the jury as far as race. Now Miss Hall has struck Lura Jamison, who is a black female, and I would represent to the Court that she should not be allowed to do that because that would not be a representative makeup on the jury, denying this defendant of his right to a trial by a jury of his peers. *And I would ask the Court to require Miss Hall to state the reasons for striking this juror.* [Emphasis added.]
>
> THE COURT: *She does not have to state any reasons. She just feels the juror wouldn't be a proper juror for this case. I mean, that's her reason, obviously.* [Emphasis added.]
>
> MR. COLOSI: Well, I think there's case law out there that—
>
> THE COURT: I mean you've preserved the record on that point. And this is your second time.

Trial Transcript at 66–67. These highlighted portions show the essence of the error below: After defense counsel makes a *prima facie* showing that the prosecutor is *intentionally* removing black jurors from the venire because of their race, *Batson* and *Marrs* require a statement on the record by the prosecutor of the non-discriminatory reasons for her peremptory strike. The circuit court refused to conduct such an inquiry—an inquiry required by *Batson* and its progeny.

In theory, the peremptory challenge system will lead to a jury that is well-balanced. However, in order to assure fair trials we must take care to ensure that no impermissible uses are made of peremptory challenges. As the U.S. Supreme Court held in *Glasser v. United States*, 315 U.S. 60, 85–86, 62 S.Ct. 457, 471–72, 86 L.Ed. 680 (1942):

> [T]he proper functioning of the jury system, and, indeed, our democracy itself requires that the jury be 'a body truly representative of the community,'; and not the organ of any special group or class. If that requirement is observed, the officials charged with [selecting the petit jury from the venire] may exercise some discretion to the end that competent jurors may be called. But they must not allow the desire for competent jurors to lead them into selections which do not comport with the concept of the jury as a cross-section of the community. Tendencies, no matter how slight, toward the selection of jurors by any method other than a process which will insure a trial by a representative group are undermining processes weakening the institution of jury trial and should be sturdily resisted.

In order to meet the goals of *Batson* and *Glasser*, some judicial monitoring of the use of peremptory challenges is constitutionally required. The peremptory challenge is not constitutionally based. *Batson*, 476 U.S. at 98, 106 S.Ct. at 1723. When the exercise of such challenges comes into conflict with a constitutional right, the peremptory challenge must yield. In *Batson*, the U.S. Supreme Court deemed an accommodation necessary:

> While we recognize, of course, that the peremptory challenge occupies an important position in our trial procedures, we do not agree that our decision today will undermine the contribution the challenge generally makes to the administration of justice. The reality of practice, amply reflected in many state- and federal-court opinions, shows that the challenge may be, and unfortunately at times has been, used to discriminate against black jurors. By requiring trial courts to be sensitive to the racially discriminatory use of the peremptory challenges, our decision enforces the mandate of equal protection and furthers the ends of justice.

*Batson,* 476 U.S. at 98–99, 106 S.Ct. at 1724.

■ The accommodation reached in *Batson* required prosecutors to state on the record their reasons for striking jurors of the same race as a criminal defendant when a criminal defendant could make a *prima facie* showing of discriminatory intent on the part of the prosecutor. *Batson,* 476 U.S. at 96–97, 106 S.Ct. at 1722–1723; *Marrs,* 180 W.Va. at 695, 379 S.E.2d at 499. Since *Batson,* the U.S. Supreme Court has expanded the scope of *Batson* to require an inquiry whenever there might be discrimination in juror selection irrespective of the race of the defendant (*Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991)), the nature of the action, i.e., civil or criminal (*Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991)), or the party that strikes the jurors (*Georgia v. McCollum,* —— U.S. ——, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992)).[2] These decisions have made it clear that when a criminal defendant complains of a *Batson* violation, he or she is asserting third-party standing to bring a suit on behalf of the dismissed jurors, *not* a mere personal right to have members of his or her racial group on the petit jury. As the U.S. Supreme Court held in *Powers,* 499 U.S. at ——, 111 S.Ct. at 1373:

> Both the excluded juror and the criminal defendant have a common interest in eliminating racial discrimination from the courtroom. A venireperson excluded from jury service because of race suffers a profound personal humiliation heightened by its public character. The rejected juror may lose confidence in the court and its verdicts, as may the defendant if his or her objections cannot be heard. This congruence of interests makes it necessary and appropriate for the defendant to raise the rights of the juror. And, there can be no doubt that petitioner will be a motivated, effective advocate for the excluded venirepersons' rights. Petitioner has much at stake in proving that his jury was improperly constituted due to an equal protection violation, for we have recognized that discrimination in the jury selection process may lead to the reversal of a conviction.

■ Therefore, to establish *Batson prima facie* case the defendant need only object to the strikes on the grounds that the prosecutor has a discriminatory motive. At that point, the court must ask the prosecutor to state on the record a legitimate non-discriminatory reason for the strike. As the U.S. Supreme Court held in *Powers:*

> The Fourteenth Amendment's mandate that race discrimination be eliminated from all official acts and proceedings of the State is most compelling in the judicial system.... We have held, for example, that prosecutorial discretion cannot be exercised on the basis of race ... and that, where racial bias is likely to influence a jury, *an inquiry must be made*

---

**2.** Furthermore, the U.S. Supreme Court just granted *certiorari* in a case involving the striking of women from a jury panel solely because of their gender. *J.E.B. v. T.B.,* —— U.S. ——, 113 S.Ct. 2330, 124 L.Ed.2d 242 (1993). If the U.S. Supreme Court holds that the Equal Protection Clause requires (similar to *Batson*) an on-the-record statement of a reason for a peremptory challenge of a woman, that will pretty much sound the death knell for the peremptory challenge as we know it. The Supreme Court would, *de facto,* be adopting a position like the one Justice Marshall urged in his concurrence to *Batson:*

> The inherent potential of peremptory challenges to distort the jury process by permitting the exclusion of jurors on racial grounds should ideally lead the Court to ban them entirely from the criminal justice system. [Citations omitted] Justice Goldberg, dissenting

in *Swain* [*v. State of Ala.,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) ], emphasized that '[w]ere it necessary to make an absolute choice between the right of the defendant to have a jury chosen in conformity with the Fourteenth Amendment and the right to challenge peremptorily, the Constitution compels the choice of the former." 380 U.S., at 244 [85 S.Ct., at 849]. I believe that this case presents such a choice, and I would resolve that choice by eliminating peremptory challenges entirely in criminal cases.

*Batson,* 476 U.S. at 107, 106 S.Ct. at 1729 (Marshall, J., concurring). Although there seems to be only lukewarm support for a *de jure* abolition of the peremptory challenge, all such challenges will most likely need to have some non-discriminatory rationale put on the record before they will be allowed. However, such is not yet the law.

428

*into such bias....* The statutory prohibition on discrimination in the selection of jurors, 18 U.S.C. § 243, enacted pursuant to the Fourteenth Amendment's Enabling Clause, makes race neutrality in jury selection a visible, and inevitable, measure of the judicial system's own commitment to the commands of the Constitution. The courts are under an affirmative duty to enforce the strong statutory and constitutional policies embodied in that prohibition. [Citations omitted; Emphasis added.]

*Powers,* 499 U.S. at —, 111 S.Ct. at 1373.

For the foregoing reasons, the judgment of the Circuit Court of McDowell County is reversed and the case is remanded for a new trial.

Reversed and Remanded.