490 S.E.2d 696

**Thomas PARHAM, Sr., as an Individual, Joyce Parham, as an Individual, and Thomas Parham, Sr., as the Next Friend of Thomas Parham, Jr., an Infant, Petitioners Below, Appellants,**

v.

**HORACE MANN INSURANCE COMPANY, a Corporation, and Jerry Richmond, Respondents Below, Appellees.**

No. 23699.

Supreme Court of Appeals of West Virginia.

Submitted April 23, 1997.

Decided July 11, 1997.

J. Franklin Long, Katherine L. Dooley, Bluefield, for Appellants.

Jerry J. Cameron, Brewster, Morhous & Cameron, Bluefield, for Appellees.

WORKMAN, Chief Justice:

The petitioners below and Appellants herein, Thomas Parham, Sr., as an individual, Joyce Parham, as an individual, and Thomas Parham, Sr., as the next friend of Thomas Parham, Jr., an infant (hereinafter Appellants), appeal the final order of the Circuit Court of Raleigh County dated January 16, 1996. In this order, the trial court declined to set aside the jury verdict in favor of the respondents below and Appellees herein,

Horace Mann Insurance Company, a corporation, and Jerry Richmond (hereinafter Appellees), and denied Appellants' motion for a new trial. On appeal, Appellants argue that Appellees unlawfully used a peremptory strike to remove a black person from the venire and that the trial court erroneously shifted the burden of proof from Appellees to Appellants by its instructions to the jury. For the following reasons, we affirm the trial court's final order.

## I.

### JURY SELECTION

### A.

#### Factual and Procedural Background

In the underlying case, Appellants filed a declaratory judgment action against Appellees, alleging that Appellees failed to make a commercially reasonable offer of underinsurance motorist coverage. During jury selection, Appellees peremptorily struck one of two potential black jurors from the venire.[1] Immediately thereafter, the following conversation transpired among J. Franklin Long, counsel for Appellants, Jerry J. Cameron, counsel for Appellees, and the trial court:

MR. LONG: . . . As I understand, in the state of West Virginia, it's improper to remove a person from the jury based upon race. As I viewed the jury, the whole of the panel, there were two blacks on this jury, and the remainder were whites.

I'd like the record to reflect that . . . [the Parhams] are African–Americans. As—I would ask that Mr. Cameron vouch the record in case this matter is appealed, as to the reason why he took a black off of the jury, and as I understand it, that would be Mrs. Anthony, Marva Anthony.

MR. CAMERON: Your Honor, I object, and I don't think that I have to give, right now, the reason that I struck her. I would represent to the Court that it wasn't because of race.

THE COURT: I accept that at this time. That may become an issue, Mr. Cameron. And my reading of the case law

is exactly as Mr. Long has stated, and it will be your obligation, if challenged, to articulate a non-racial basis for removal of the black juror.

MR. CAMERON: I understand that. I think, at the proper time, if that is an issue, I will be glad to inform the Court as to the reason that I struck her, but I don't think at this time, prior to the trial, when the plaintiffs' counsel has questioning and all to do, of witnesses, that it would be the proper time for me to reveal that.

THE COURT: I understand. Go ahead, Mr. Long.

MR. LONG: For the record, Mr. Cameron, can we stipulate that—that there were two blacks on the jury, and the rest of the jury was white, and that one of those blacks is still on the jury, and the other black was struck by you, by Marva—who is Marva Anthony?

MR. CAMERON: Certainly.

MR. LONG: Thank you.

THE COURT: Anything else?

MR. LONG: Nothing further, Your Honor.

After the jury returned a verdict in favor of Appellees, Appellants filed their motion for a new trial, arguing that the trial court committed reversible error by failing to require Appellees to state a race-neutral reason for using a peremptory strike against one of the black jurors. In response to the motion, the trial court sent copies of a letter to counsel for both parties, requesting Mr. Cameron submit an affidavit stating his reasons for striking the prospective juror. Mr. Cameron complied with the trial court's request and averred that he struck the prospective juror for two reasons. First, the prospective juror was employed as a social worker and Mr. Cameron believed social workers "normally foster[ ] a more liberal view and [have] a greater tendency to find for the individual [and] against the corporation. . . ." Second, the prospective juror indicated during voir dire that she knew the petitioners.

On December 18, 1995, the trial court held a hearing on Appellants' motion for a new

1. The other black venireperson was selected to serve as a juror.

trial. On the same day as the hearing, Appellants filed a written objection to the trial court's request for the affidavit, Mr. Cameron's submission of the affidavit, and the trial court's consideration of the affidavit. Appellants argued it simply was "too late to neutralize the effects of the respondents['] discriminatory acts by the submission of an affidavit months after a jury verdict." After hearing the arguments of counsel for both parties, the trial court concluded in its order dated January 16, 1996, that, "although it may have been better practice to have required counsel to state a reason on the record at the time of the trial, the court knows ... [Mr. Cameron] and has no reason to believe from the proceedings and its knowledge of him, that the reason for [the] peremptory strike was other than stated in the affidavit." Thereafter, the trial court found the jury represented the population of Raleigh County and denied Appellants' motion for a new trial.[2]

## B.

### Analysis

▇ Racial and gender discrimination in the jury selection process are prohibited by the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and Article III,. § 10 of the West Virginia Constitution. *State v. Rahman,* 199 W.Va. 144, 157–58, 483 S.E.2d 273, 286–87 (1996) (Cleckley, J., concurring). As explained by the United States Supreme Court in *J.E.B. v. Alabama ex rel. T.B.,* 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994):

Equal opportunity to participate in the fair administration of justice is fundamental to our democratic system. It not only furthers the goals of the jury system. It reaffirms the promise of equality under the law—that all citizens, regardless of race, ethnicity, or gender, have the chance to take part directly in our democracy.... When persons are excluded from participation in our democratic processes solely because of race or gender, this promise of equality dims, and the integrity of our judicial system is jeopardized.

*Id.* at 145–46, 114 S.Ct. at 1430, 128 L.Ed.2d at 107 (footnote and citation omitted).[3]

▇ In the landmark decision of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court set forth the basic analytical framework to apply when evaluating whether a peremptory strike was used for a discriminatory purpose. In cases in which peremptory strikes are challenged as being discriminatorily motivated, careful application of the *Batson* framework will help ensure the equality of all citizens and the integrity of our jury selection process. *See J.E.B.,* 511 U.S. at 145–46, 114 S.Ct. at 1430, 128 L.Ed.2d at 107. To prove a violation of equal protection, the analytical framework established in *Batson* involves three steps. First, there must be a prima facie case of improper discrimination. Second, if a prima facie case is shown, the striking party must offer a neutral explanation for making the strike. Third, if a neutral explanation is given, the trial court must determine "whether the opponent of the strike has proved purposeful ... discrimina-

---

**2.** Appellees assert Appellants failed to preserve the alleged error because Appellants never objected to the use of the strike, never moved to strike the panel, and never moved for a mistrial. Although the word "object" was not actually stated by Appellants' counsel and it would have been the better course for counsel to specifically use that word to irrefutably make his objection on the record, we find it clear from the discussion that the parties and the trial court understood Appellants' counsel was objecting to the use of the peremptory strike and was vouching the record for purposes of appeal. *See* Syl. Pt. 2, *State ex rel. Cooper v. Caperton,* 196 W.Va. 208, 470 S.E.2d 162 (1996) ("To preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert a circuit court to the nature of the claimed defect."); W.Va.R.Civ.P. 46 ("Formal exceptions to rulings or orders of the court are unnecessary; ... it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor....").

**3.** *See also* Syl. Pt. 1, *State v. Marrs,* 180 W.Va. 693, 379 S.E.2d 497 (1989) ("It is a violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. *Constitution* for a member of a cognizable racial group to be tried on criminal charges by a jury from which members of his race have been purposely excluded.").

tion." *Purkett v. Elem,* 514 U.S. 765, 767, 115 S.Ct. 1769, 1770–71, 131 L.Ed.2d 834, 839 (1995) (per curiam) (citations omitted); *Rahman,* 199 W.Va. at 155, 483 S.E.2d at 284. So long as the reasons given in step two are facially valid, the explanation for the strike need not be persuasive or plausible. The persuasiveness of the explanation does not become relevant until the third step when "the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination." *Purkett,* 514 U.S. at 768, 115 S.Ct. at 1771, 131 L.Ed.2d at 839 (citing *Batson,* 476 U.S. at 98, 106 S.Ct. at 1724, 90 L.Ed.2d at 88–89).

■ We adopted the *Batson* framework and quoted a portion of its quintessential language in syllabus point two of *State v. Marrs,* 180 W.Va. 693, 379 S.E.2d 497 (1989), which provides:

> To establish a prima facie case for a violation of equal protection due to racial discrimination in the use of peremptory jury challenges by the State, "the defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account

of their race." [Citations omitted.] *Batson v. Kentucky,* 476 U.S. 79 at 96, 106 S.Ct. 1712 at 172[3], 90 L.Ed.2d 69 [at 87–88] (1986).

*Id.*[4] We further explained in syllabus point three of *Marrs* that "[t]he State may defeat a defendant's prima facie case of a violation of equal protection due to racial discrimination in selection of a jury by providing non-racial, credible reasons for using its peremptory challenges to strike members of the defendant's race from the jury." *Id.*[5] To be clear, however, when a peremptory strike is challenged, "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Purkett,* 514 U.S. at 768, 115 S.Ct. at 1771, 131 L.Ed.2d at 839 (citations omitted).

■ Both the Supreme Court and this Court have made clear that it no longer matters whether the party exercising a peremptory strike is a private litigant in a civil action or a State actor; as neither a private litigant nor the State may use a peremptory strike to advance racial or sexual discrimination in civil or criminal cases. *See Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 630, 111 S.Ct. 2077, 2088, 114 L.Ed.2d 660, 680 (1991) (holding "courts must entertain a challenge to a private litigant's racially discriminatory use of peremptory challenges in a civil trial"); *Payne v. Gundy,* 196 W.Va. 82, 468 S.E.2d 335 (1996) (finding equal protection extends to peremptory strikes exercised upon the basis of gender in civil actions). Although this Court specifically extended equal protection rights in *Payne* to civil cases

---

4. The method in which a criminal defendant may establish a prima facie case was expanded upon in syllabus point four of *State ex rel. Azeez v. Mangum,* 195 W.Va. 163, 465 S.E.2d 163 (1995), where we stated, in part, that, in order to establish a prima facie case of racial discrimination, criminal defendants no longer need to demonstrate that they are "a member of the same racial group as the prospective juror who was the subject of the state's peremptory challenge." *See also State v. Harris,* 189 W.Va. 423, 427, 432 S.E.2d 93, 97 (1993) (stating "to establish [a] *Batson prima facie* case the defendant need only object to the strikes on the grounds that the prosecutor has a discriminatory motive").

5. In syllabus point nine of *State v. Kirkland,* 191 W.Va. 586, 447 S.E.2d 278 (1994), we said:

> A trial court should conduct an evidentiary hearing if, after considering the prosecutor's representations regarding the reasons for using a peremptory strike to exclude the only remaining black juror, the court deems that the circumstances surrounding the prosecutor's representations warrant such a hearing to determine whether the explanations offered by the prosecutor in exercising said strike were racially neutral or discriminatory in nature. The determination on whether to conduct an evidentiary hearing is within the sound discretion of the trial court.

alleging gender discrimination in the use of peremptory strikes, equal protection, of course, also will apply to peremptory strikes exercised in civil cases on the basis of race. *See Edmonson,* 500 U.S. at 630, 111 S.Ct. at 2088, 114 L.Ed.2d at 680. To reflect this point, we, hereby, expand upon our decision in *Payne* to include racial discrimination. Thus, we hold:

> It is a violation of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States and article III, section 10, of the Constitution of West Virginia for a party in a civil action to purposefully eliminate potential jurors from a jury through the use of peremptory strikes solely upon the basis of gender [or race].

Syl. Pt. 4, *Payne* (as modified).

■ If a peremptory strike is challenged as being based upon gender or race, the trial court is given substantial discretion in determining whether the reasons articulated by the striking party are merely pretextual. *Rahman,* 199 W.Va. at 159, 483 S.E.2d at 288 (Cleckley, J., concurring). Thus, upon review, this Court will afford great weight to the trial court's findings as to whether the peremptory strike was used to advance racial or sexual discrimination. *Rahman,* 199 W.Va. at 157, 483 S.E.2d at 286 (1996) (majority opinion; citing *State v. Kirkland,* 191 W.Va. 586, 596, 447 S.E.2d 278, 288 (1994)).[6] As stated by the United States Supreme Court:

> In *Batson,* we explained that the trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal. . . .
>
> . . . .

*Id.*

6. *Accord State v. Bass,* 189 W.Va. 416, 422 n. 2, 432 S.E.2d 86, 92 n. 2 (1993) (stating "deference should ordinarily be given to the trial court's findings in regard to an evaluation of nonracial reasons proffered by the State for excluding potential jurors through the use of a peremptory strike"); *cf. Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518, 528 (1985) (declaring "a finding of intentional discrimination [in a Title VII sex discrimination

Deference to trial court findings on the issue of discriminatory intent makes particular sense in this context because, as we noted in *Batson,* the finding "largely will turn on evaluation of credibility."

*Hernandez v. New York,* 500 U.S. 352, 364–65, 111 S.Ct. 1859, 1868–69, 114 L.Ed.2d 395, 408–09 (1991) (quoting, in part, *Batson v. Kentucky,* 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21, 90 L.Ed.2d at 89 n. 21 (1986)).[7]

■ Adhering to the above principles, we turn to the facts of the present case. It is clear from the record that Appellees' counsel peremptorily struck a venireperson belonging to the same cognizable racial group as Appellants.[8] In addition, the record reflects that Appellees' counsel offered a race-neutral explanation for the strike. In this respect, Appellees' counsel averred that he used the peremptory strike because (1) he believed the potential juror's occupation as a social worker "foster[ed] a more liberal view and a greater tendency to find for the individual [and] against the corporation" and (2) the potential juror indicated that she knew the plaintiffs. At the post-trial hearing, the peremptory strike was discussed, and the trial court was able to evaluate the credibility of the reasons offered by Appellees' counsel. After listening to arguments by both parties, the trial court concluded that there was no reason to believe Appellees' counsel fabricated his reasons for striking the potential juror.

■ After examining the record and providing substantial deference to the trial court's findings, we cannot say the trial court erred by determining that Appellants failed to prove purposeful racial discrimination by Appellees' counsel's use of the peremptory strike against one of the black veniremembers. Nevertheless, Appellants argue

case] is a finding of fact . . . [that] 'shall not be set aside unless clearly erroneous . . .' ").

7. *Quoted in Rahman,* 199 W.Va. at 157, 483 S.E.2d at 286; *Kirkland,* 191 W.Va. at 596, 447 S.E.2d at 288.

8. Although Appellants and the struck venireperson are of the same cognizable racial group in this case, both this Court and the Supreme Court no longer require such congruity in establishing a prima facie case. *See supra* note 4.

the trial court procedurally erred by failing to require Appellees' counsel to state his reasons for using the peremptory strike at the time the strike was made. Appellants assert that the trial court's request and acceptance of Appellees' counsel's affidavit, nearly three months after the trial was concluded, tainted the entire process. Therefore, Appellants contend the trial court's ruling should be reversed.

■ In deciding this issue, we recognize equal protection not only protects the rights of the parties to have a jury which has not been invidiously affected during the selection process by discrimination, but it also protects the rights of the individual veniremembers not to be excluded from participating in the administration of justice on the basis of race or gender. *See State v. Harris,* 189 W.Va. 423, 427, 432 S.E.2d 93, 97 (1993) (finding "that when a criminal defendant complains of a *Batson* violation, he or she is asserting third-party standing to bring a suit on behalf of the dismissed jurors, *not* a mere personal right to have members of his or her racial group on the petit jury"). As stated by the United States Supreme Court in *Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), although an individual has no right to sit on a specific jury, such individual "does possess the right not to be excluded from one on account of race." 499 U.S. at 409, 111 S.Ct. at 1370, 113 L.Ed.2d at 424. The Supreme Court explained that a venireperson excluded on the basis of race "suffers a profound personal humiliation heightened by its public character," possibly resulting in the venireperson's loss of confidence in our judicial system. *Id.* at 413–14, 111 S.Ct. at 1372, 113 L.Ed.2d at 427.[9]

■ In this light, a delay in requiring a striking party to articulate its reasons for exercising a peremptory strike until after the trial is completed fails to vindicate the rights of any venireperson wrongfully excluded from sitting on a jury. *See Missouri v.*

*Parker,* 836 S.W.2d 930, 936 (Mo.1992) (en banc) (stating that even when the panel is quashed and the jury selection process begins anew, it "does not really correct the error. . . . [T]he discrimination endured by the excluded venirepersons goes completely unredressed since they remain wrongfully excluded from jury service."). On the other hand, an immediate resolution of a *Batson* challenge will provide the trial court with the opportunity to disallow a discriminatory peremptory strike, protecting the equal protection rights of the venireperson along with the equal protection rights of the non-striking party. This approach promotes judicial economy by addressing meritorious claims without the necessity of awarding a new trial. *See id.* This approach also permits the striking party to articulate its reason for exercising the peremptory strike while the facts are fresh in the minds of all the participants, and it reduces the appearance that the striking party had time to fabricate its reason for using the strike. *See id.* at 938.

■ Given the force and persuasiveness of the reasons in favor of an immediate resolution of a *Batson* challenge, we conclude that, if a peremptory strike is challenged as being discriminatorily motivated in violation of equal protection, it is the duty of the trial court to apply the analytical framework set forth by the Supreme Court in *Batson* and its progeny, together with any elucidations thereof adopted by this Court, before the venireperson is removed from the panel. If the challenge proves meritorious, the trial court shall disallow the strike. On the other hand, if we permit trial courts to routinely postpone *Batson* rulings until after trials are completed, the rights to be protected by *Batson* and its progeny, to a large extent, would become vain and illusionary. *See* Charles J. Ogletree, *Just Say No!: A Proposal to Eliminate Racially Discriminatory Uses of Peremptory Challenges,* 31 Am.Crim. L.Rev. 1099, 1116 (1994) (suggesting "the inconvenience of having to assemble a new

---

**9.** *See also Georgia v. McCollum,* 505 U.S. 42, 49, 112 S.Ct. 2348, 2353, 120 L.Ed.2d 33, 44 (1992) (holding a criminal defendant may not use a peremptory strike in a discriminatory manner because "[r]egardless of who invokes the discriminatory challenge, there can be no doubt

that the harm is the same—in all cases, the juror is subjected to open and public racial discrimination"). We followed the lead of the Supreme Court in syllabus point four of *Azeez. See supra* note 4.

jury pool may be one of the factors that leads trial judges to accept questionable prosecutorial rationales; current application of *Batson* makes life more difficult for judges who reject fishy pretexts, rather than for prosecutors who offer them").[10]

■ Having now made clear the procedural timing of when a striking party must articulate a nondiscriminatory reason for exercising a peremptory strike, we must determine whether the manner in which the trial court handled the strike in this case is sufficient to merit a new trial. From the record, it is obvious that the trial court was confused by the procedure to be followed, opting to postpone requiring Appellees' counsel to state his reasons until after the trial was completed. Although *Harris* contains a cursory remark that after a defendant establishes a prima facie case, "[a]t that point, the court must ask the prosecutor to state on the record a legitimate non-discriminatory reason for the strike," [11] we have not previously made this practice as abundantly clear as we do today. Moreover, at the post-trial hearing, the trial court not only determined Appellees' counsel articulated a sufficient nondiscriminatory reason for making the strike, but it also stated it had "no reason to believe that ... [Appellees' counsel had] gone out and fabricated ... a reason." Considering these facts, we conclude the procedural error committed by the trial court did not result in substantial injustice or prejudice the substantive rights of Appellants. Therefore, we consider such error harmless, and decline to reverse the final decision of the trial court.[12] *See* W. Va. R. Civ. P. 61.[13]

In conclusion, we emphasize that our decision today, declining to award a new trial to Appellants as a result of this procedural error, is a narrow one based upon the specific facts of this case. Our refusal to reverse this case in no way should be interpreted as an implicit, backdoor approval of peremptory strikes being used in a discriminatory fashion. Indeed, if Appellants had established Appellees' counsel harbored a discriminatory animus in making the peremptory strike, this error could not be viewed as harmless.[14]

---

**10.** Professor Ogletree further argues that calling a new jury panel when prosecutors use peremptory challenges in a racially discriminatory manner "has little practical effect. A prosecutor is no worse off after having attempted to exercise peremptory challenges against minorities based on their race than if he had not done so." *Id.*

**11.** 189 W.Va. at 427, 432 S.E.2d at 97.

**12.** *Cf. Skaggs v. Elk Run Coal Co.*, 198 W.Va. 51, 70–71, 479 S.E.2d 561, 580–81 (1996) (recognizing "recent decisions ... direct reviewing judges to inquire, when determining whether an alleged error is harmless, whether they are in 'grave doubt about the likely effect of an error on [the] jury's verdict,' *O'Neal [v. McAninch]*, 513 U.S. [432,] 435, 115 S.Ct. [992,] 994, 130 L.Ed.2d [947,] 951 [(1995)]; if a court does have grave doubt, then the error is harmful"); *Lawyer Disciplinary Bd. v. Allen*, 198 W.Va. 18, 40, 479 S.E.2d 317, 339 (1996) (finding due process errors complained about during disciplinary proceedings were harmless because they did not result in substantial injustice or prejudice substantial rights); *State v. Omechinski*, 196 W.Va. 41, 48 n. 11, 468 S.E.2d 173, 180 n. 11 (1996) (stating "[m]ost errors, including constitutional ones are subject to harmless error analysis ... simply because it makes no sense to retry a case if the result assuredly will be the same"); Syl. Pt. 3, *State v. Farmer*, 193 W.Va. 84, 454 S.E.2d 378 (1994) (reiterating that constitutional errors will be deemed harmless when it can be shown there

is no reasonable possibility the violation contributed to the conviction).

**13.** Rule 61 of the West Virginia Rules of Civil Procedure provides:

No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

*Id.*

**14.** *See generally Sullivan v. Louisiana*, 508 U.S. 275, 278–82, 113 S.Ct. 2078, 2081–83, 124 L.Ed.2d 182, 189–91 (1993) (holding the harmless error doctrine will not apply if a constitutionally deficient reasonable-doubt instruction is read to the jury); *Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705, 710 (1967), *limited on other grounds Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (recognizing "there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error"); *Tennant v. Marion Health Care Found.,*

## II.

### JURY INSTRUCTIONS

Appellants second assignment of error is that Appellees' first jury instruction given by the trial court was based upon a statutory presumption which did not exist at the time Appellees made its offer of insurance to Appellants.[15] Appellants also complain that this instruction, in conjunction with two other instructions offered by Appellees and given by the trial court over Appellants' objection, improperly shifted the burden of proof from Appellees to Appellants on the issue of whether Appellees made a commercially reasonable offer of underinsured motorist coverage.[16] Appellants, therefore, request this Court to reverse the jury's verdict and remand this case for a new trial. Upon review, we find the instructions do not constitute reversible error.

---

194 W.Va. 97, 110–11 & n. 17, 459 S.E.2d 374, 387–88 & n. 17 (1995) (stating a claim that there is an appearance of impropriety on the part of the original trial judge "does not rise to the level of a fundamental defect in due process requiring a new trial." However, we underscored that if "actual bias" was shown, "this defect could not be overlooked on grounds of harmlessness"); Ogletree, *Just Say No!: A Proposal to Eliminate Racially Discriminatory Uses of Peremptory Challenges*, at 1121 (asserting "the harm to a defendant resulting from a *Batson* violation should not be overcome by application of the harmless-error rule").

15. Instruction number one provides:
  If you find that Horace Mann's offering of underinsured coverage on January 19, 1991 and February 15, 1991 to the Parhams contained: (1) the underinsured coverage available to the Parhams, (2) the cost of such coverage, (3) the vehicles that were subject to the coverage, and (4) the option of waiving or rejecting underinsured coverage, then you may find that Horace Mann's offers of underinsured motorist coverage to the Parhams were commercially reasonably. If you further find from a preponderance of the evidence, that Thomas Parham understood or should have understood the language of said offers, including the provision to call his local agent Jerry Richmond, if he had any questions, then you may find that the Parhams are not entitled to underinsured motorist coverage and your verdict should be for defendants, Horace Mann Insurance Company and Jerry Richmond.

## A.

### Standard of Review

In *Tennant v. Marion Health Care Foundation*, 194 W.Va. 97, 459 S.E.2d 374 (1995), we stated that a trial court exercises broad discretion in formulating jury instructions, and we will review a trial court's instructions under an abuse of discretion standard. Syl. Pt. 6, in part. Upon allegations of instructional error, we do not consider "a single paragraph, sentence, phrase, or word, but upon the charge as a whole." *Id.* at 116 n. 25, 459 S.E.2d at 393 n. 25. As we further held in syllabus point six of *Michael v. Sabado*, 192 W.Va. 585, 453 S.E.2d 419 (1994):

" ' "Instructions must be read as a whole, and if, when so read, it is apparent they could not have misled the jury, the verdict will not be disturbed, through [sic] one of said instructions which is not a binding instruction may have been susceptible of a doubtful construction while

---

16. The other two instructions, numbers five and eight, provide:

INSTRUCTION FIVE
  If you find that the Parhams on other occasions on receiving renewals, offers, and documents from Horace Mann Insurance Company had contacted their agent, Jerry Richmond, with other insurance questions that they had with relation to same then you may consider their failure to contact Jerry Richmond or another Horace Mann Insurance Company representative on the issue of whether the Parhams understood or should have understood the offers of underinsured motorist coverage of January 19, 1991 and March 15, 1991 and, if not, whether they acted as reasonable persons in failing to do so and that Thomas Parham should have known, based on his education and life experiences, that he did not understand the underinsurance coverage presented in said offers and had a duty to call for an explanation of same and in his failure to do so, failed to act as a reasonable person would have acted and by failing is barred from asserting that he is entitled to any underinsured coverage other than as he selected on said offers.
INSTRUCTION EIGHT
  The Court instructs the jury, that the Parhams had a duty to act reasonably in connection with the offers of underinsured motorist coverage, and if you believe from a preponderance of the evidence that Thomas Parham's conduct was not reasonable then you should return a verdict for Horace Mann Insurance Company and Jerry Richmond.

standing alone." Syl. Pt. 3, *Lambert v. Great Atlantic & Pacific Tea Company*, 155 W.Va. 397, 184 S.E.2d 118 (1971).' Syllabus Point 2, *Roberts v. Stevens Clinic Hospital, Inc.*, 176 W.Va. 492, 345 S.E.2d 791 (1986)." Syllabus Point 3, *Lenox v. McCauley*, 188 W.Va. 203, 423 S.E.2d 606 (1992).

*Id.* As to the legal correctness of a jury instruction, however, our review is de novo. *Skaggs v. Elk Run Coal Co., Inc.*, 198 W.Va. 51, 63, 479 S.E.2d 561, 573 (1996) (citing *State v. Guthrie*, 194 W.Va. 657, 671, 461 S.E.2d 163, 177 (1995)). In other words, a "trial court ... has broad discretion in formulating its charge to the jury, so long as the charge accurately reflects the law." *State v. Bradshaw*, 193 W.Va. 519, 543, 457 S.E.2d 456, 480 (1995). From this view, we proceed to address the instructional errors alleged by Appellants.

### B.

#### *Analysis*

■ The first issue we confront is whether the trial court erred by instructing the jury it may presume Appellees made a commercially reasonable offer of underinsured motorist coverage if Appellees offer of insurance included: "(1) the underinsured coverage available to ... [Appellants], (2) the cost of such coverage, (3) the vehicles that were subject to the coverage, and (4) the option of waiving or rejecting underinsured coverage...." Appellants argue it was wrong for the trial court to instruct the jury it could presume Appellees made a commercially reasonable offer of insurance pursuant to these criteria because the statute creating the presumption, West Virginia Code § 33-6-31d (1993),[17] did not exist at the time the offer in this case was made. Although we agree with Appellants that West Virginia Code § 33-6-31d was not in existence at the time the offer in this case was made,[18] we do not find the trial court erred by pronouncing what may constitute a commercially reasonable offer of underinsured motorist coverage as outlined in the statute.

West Virginia Code § 33-6-31d was adopted by our legislature in 1993 to specify the manner in which an insurer shall make an offer of optional uninsured and underinsured motorist coverage. *Cox v. Amick*, 195 W.Va. 608, 615, 466 S.E.2d 459, 466 (1995). Similar to the present case, the plaintiffs in *Cox* argued West Virginia Code § 33-6-31d did not apply because it was enacted after the time the offer of insurance was made.[19] Nevertheless, we held that, because West Virginia Code § 33-6-31d merely clarifies the legislative intent of West Virginia Code § 33-6-31 (1988),[20] the two statutes should be read in pari materia with one another. *Id.* at 615, 466 S.E.2d at 466.[21] In the pres-

---

**17.** West Virginia Code § 33-6-31d provides, in part:

> (c) ... The contents of a form described in this section which has been signed by any named insured shall create a presumption that all named insureds under the policy received an effective offer of the optional coverages described in this section and that all such named insured exercised a knowing and intelligent election or rejection, as the case may be, of such offer as specified in the form. Such election or rejection is binding on all persons insured under the policy.

*Id.* Pursuant to subsection (a) "[t]he contents of the form ... shall specifically inform the named insured of the coverage offered and the rate calculation therefor, including, but not limited to, all levels and amounts of such coverage available and the number of vehicles which will be subject to the coverage." W.Va.Code § 33-6-31d(a).

**18.** The disputed offers in this case were made in 1991.

**19.** The underlying action in *Cox* arose from a 1992 automobile accident. *Id.* at 611, 466 S.E.2d at 462.

**20.** In relevant part, the third proviso of West Virginia Code § 33-6-31(b) (1988) states that a motor vehicle policy

> shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall legally be entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle up to an amount not less than limits of bodily injury liability insurance and property damage liability insurance purchased by the insured without setoff against the insured's policy or any other policy.

*Id.* (emphasis added).

**21.** As stated in syllabus point one of *State ex rel. Lambert v. County Commission of Boone County*, 192 W.Va. 448, 452 S.E.2d 906 (1994):

> "Statutes which relate to the same persons or things, or to the same class of persons or

ent case, we continue to adhere to this view. Moreover, the instruction Appellants complain about was not mandatory. The jury specifically was told that it "may find" Appellees made a commercially reasonable offer to Appellants if the offer contained certain information. The jury was in no way required to "presume" a commercially reasonable offer was made based solely upon the criteria set forth in the instruction. Therefore, for these reasons, we conclude the trial court did not error by instructing the jury as to what may constitute a commercially reasonable offer of underinsured motorist coverage.

■ Appellants further complain, however, that all three instructions effectively shifted the burden of proof from Appellees to Appellants which is contrary to what this Court said in *Bias v. Nationwide Mut. Ins. Co.*, 179 W.Va. 125, 365 S.E.2d 789 (1987). In *Bias*, this Court interpreted the third proviso of West Virginia Code § 33–6–31(b) (Supp.1987) [22] as requiring uninsured and underinsured motorist coverage be offered to insureds. 179 W.Va. at 127, 365 S.E.2d at 791. In syllabus points two and three, we further stated:

> 1. Where an offer of optional coverage is required by statute, the insurer has the burden of proving that an effective offer was made, and that any rejection of said offer by the insured was knowing and informed.
>
> 2. When an insurer is required by statute to offer optional coverage, it is included in the policy by operation of law when the insurer fails to prove an effective offer and a knowing and intelligent rejection by the insured.

*Id.*[23] Appellants assert that the three instructions are incorrect statements of law under *Bias* by asking the jury to speculate about whether Mr. Parham had a duty to understand the underinsurance coverage offered and whether Mr. Parham was negligent in not seeking additional information regarding underinsurance coverage. Although these instructions could be considered somewhat vague as to the burden of proof while standing alone,[24] after examining the charge as a whole, we find the trial court clearly informed the jury that Appellees had the burden to prove it made a commercially reasonable offer of insurance and that Appellants made a knowing and intelligent rejection of such insurance.[25] Therefore, we conclude Appellants were not prejudiced by these in-

things, or statutes which have a common purpose will be regarded in *pari materia* to assure recognition and implementation of the legislative intent. Accordingly, a court should not limit its consideration to any single part, provision, section, sentence, phrase or word, but rather review the act or statute in its entirety to ascertain legislative intent properly." Syl. pt. 5, *Fruehauf Corp. v. Huntington Moving & Storage Co.*, 159 W.Va. 14, 217 S.E.2d 907 (1975).
*Id.*

22. The 1987 version of West Virginia Code § 33–6–31(b) did not contain the language "without setoff against the insured's policy or any other policy" at the end of the relevant portion of the 1988 version quoted in note 20, *supra*.

23. *See also* Syl. pt. 2, *Riffle v. State Farm Mut. Auto. Ins. Co.*, 186 W.Va. 54, 410 S.E.2d 413 (1991) ("*W.Va.Code* 33–6–31(b) [1988], mandates that when an insurer fails to prove an effective offer and a knowing and intelligent waiver by the insured, the insurer must provide the minimum coverage required to be offered under the statute.").

24. Appellees assert the disputed instructions merely convey the fact Mr. Parham was required to act as a reasonable person.

25. For instance, the very first instruction offered by Appellants and given to the jury states, in part, that "the insurer has the burden of proving by a preponderance of the evidence that an effective offer was made and that any rejection of said offer by the insured was knowing and informed." The second instruction provides, in part, that the insurer "had a duty to offer optional underinsurance coverage in a commercially reasonable manner." As relevant, the fourth jury instruction states the insurer "must prove by a preponderance of the evidence that it made an effective offer of underinsured motorist coverage to Joyce or Thomas Parham, Sr. If no effective offer was made, then such coverage is included in the policy by operation of law." In addition, the fifth jury instruction explained that "if the jury finds that the contract language in the policy or forms purporting to explain or request underinsurance coverage by Joyce and Thomas Parham, Sr. was wrong, ambiguous or in doubt, then that language may be construed against" the insurer and in favor of the insured.

structions.[26]

## III.

## CONCLUSION

Based upon our resolution of the foregoing *Batson* and jury instruction challenges raised by Appellants, we affirm the final order of the Circuit Court of Raleigh County.

Affirmed.

---

26. After reviewing the facts of the case, we find no merit to Appellants' contention that there was no evidence to support the instructions.