# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 14-0545** (Kanawha County 13-M-AP-5)

**Thomas King,**
**Defendant Below, Petitioner**

**FILED**

April 10, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Thomas King, by counsel Matthew A. Victor, appeals a final order of the Circuit Court of Kanawha County, entered on April 29, 2014. Respondent State of West Virginia appears by counsel Shannon Frederick Kiser. This case originates in the Magistrate Court of Kanawha County, where petitioner was found guilty of the misdemeanors of domestic battery, in violation of West Virginia Code § 61-2-28(a), and domestic assault, in violation of West Virginia Code § 61-2-28(b), following a jury trial conducted in February of 2013. He was sentenced to serve one year of probation (beginning with ninety days in home incarceration) for the domestic battery conviction, and six months of probation (also beginning with ninety days in home incarceration) for the domestic assault conviction. The magistrate court ordered that these sentences would run concurrently. Petitioner filed a petition for appeal with the circuit court, and the circuit court entered the April 29 order, stating that it denied petitioner's "motion for reconsideration of sentence." This appeal followed.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

Inasmuch as the order appealed by petitioner clearly addresses his "Petition for Appeal of Jury Verdict," we treat the circuit court's order as final for "ultimate disposition under an abuse of discretion standard.[1] We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*." Syl. Pt. 4, *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996) (footnote added). "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a de novo standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415

---

[1] It is unclear why the circuit court styled its order as one denying a motion for reconsideration of sentence.

(1995). With these standards in mind (together with other relevant considerations set forth herein), we review petitioner's eight assignments of error: 1) that the circuit court erred in affirming petitioner's sentence in a single-page order; 2) that petitioner's constitutional rights were violated by the State's peremptory strike of an African-American juror without the magistrate court judge's requiring the State to offer a non-discriminatory reason for the strike; 3) that petitioner's constitutional rights were violated by the State's elimination of potential jurors on the basis of gender; 4) that there was insufficient evidence to support petitioner's conviction; 5) that the magistrate court judge failed to grant petitioner's motion for a mistrial after the complaining witness commented on petitioner's drug possession and use; 6) that the magistrate court judge admitted improper vouching evidence and prior consistent statements in violation of Rule 608 of the West Virginia Rules of Evidence; 7) that petitioner was prejudiced by the magistrate court judge's failure to disclose disciplinary records of the investigating officer and the juvenile record of the complaining witness; and 8) that the cumulative effect of these asserted errors deprived petitioner of his right to a fair trial.

## I.

Petitioner's first assignment of error is that the circuit court's single-page order denying his petition for appeal demonstrates a lack of appropriate consideration of the merits of his arguments and, therefore, was improper. We will not, however, agree that the circuit court "either misapprehended the petitioner's arguments. . . or simply failed to address the merits thereof," as petitioner argues, on the basis of the length of the order alone. Inasmuch as petitioner has offered no other justification for his position that the circuit court failed to adequately consider his appeal to that court, we reject this assignment of error and proceed to petitioner's more substantive arguments.

## II.

Turning to petitioner's second and third assignments of error, in which he argues that his constitutional rights were violated by the State's striking of an African-American potential juror and a male potential juror,[2] we begin with the established premise that "[r]acial and gender discrimination in the jury selection process are prohibited by the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and Article III, § 10 of the West

---

[2] Petitioner refers to the same pinpoint citations to support his claim that he "raised the issue of gender discrimination in the jury selection process in this case" that he cites in support of his claims of racial discrimination. We assume, then, because petitioner has not suggested otherwise, that petitioner's claims of both racial and gender discrimination are seeded in the dismissal of a single venire person. There is no gender-related challenge to the dismissal of any individual apparent on the face of the appendix record. The sole reference to gender is counsel's referring to a challenged venire person as an "African-American *gentleman*." Furthermore, petitioner's argument on appeal speaks generally to the fact that the jury ultimately was comprised of five female jurors and one male juror. We will address petitioner's arguments with respect to his second and third assignments of error coextensively, inasmuch as the analysis is the same.

Virginia Constitution." *Parham v. Horace Mann Ins. Co.*, 200 W.Va. 609, 613, 490 S.E.2d 696, 700 (1997).[3]

> To prove a violation of equal protection, the analytical framework established in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), involves three steps. First, there must be a prima facie case of improper discrimination. Second, if a prima facie case is shown, the striking party must offer a neutral explanation for making the strike. Third, if a neutral explanation is given, the trial court must determine whether the opponent of the strike has proved purposeful discrimination. So long as the reasons given in step two are facially valid, the explanation for the strike need not be persuasive or plausible. The persuasiveness of the explanation does not become relevant until the third step when the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination.

Syl. Pt. 1, *Id.* at 611, 490 S.E.2d at 698. In the end, "the ultimate burden of persuasion regarding [discriminatory] motivation rests with, and never shifts from, the opponent of the strike." Syl. Pt. 2, *Id*. Furthermore, "[u]pon review, this Court will afford great weight to a trial court's findings as to whether a peremptory strike was used to advance racial or sexual discrimination." Syl. Pt. 4, *Parham*, 200 W.Va. at 609, 490 S.E.2d at 696.

After jury voir dire was conducted, the State used peremptory strikes to remove three venire persons, including Mr. Mark Gregory. Upon the magistrate court's excusal of Mr. Gregory, petitioner's counsel stated, "Mr. Gregory is an African-American gentleman, a member of the minority. . . . I think that the reason why the State decided to excuse him." The State argued in turn that other African-American individuals remained on the jury. Although petitioner's counsel demanded that the State offer a non-discriminatory reason for the strike of Mr. Gregory, the magistrate court denied petitioner's motion. On appeal, petitioner argues that he made a valid challenge pursuant to *Batson*, that required the State to offer a non-discriminatory reason for its strike of Mr. Gregory.

---

[3] According to the incident report contained in the magistrate court record, petitioner is a white male. However, a criminal defendant no longer needs to demonstrate that he or she is "a member of the same racial group as the prospective juror who was the subject of the state's peremptory challenge" to make a prima facie case of racial discrimination. Syl. Pt. 4, in part, *State ex rel. Azeez v. Mangum*, 195 W.Va. 163, 465 S.E.2d 163 (1995) *citing Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). As we explained in *Parham*, "Equal opportunity to participate in the fair administration of justice is fundamental to our democratic system. It not only furthers the goals of the jury system. It reaffirms the promise of equality under the law—that all citizens, regardless of race, ethnicity, or gender, have the chance to take part directly in our democracy. . . . When persons are excluded from participation in our democratic processes solely because of race or gender, this promise of equality dims, and the integrity of our judicial system is jeopardized." *Parham* at 611, 490 S.E.2d at 698 (*quoting J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 145-46, 114 S.Ct. 1419, 1430, 128 L.Ed.2d 89, 107 (1994)) (footnote and citation omitted).

As described above, *Batson* established a three-part analysis to determine whether a venire person was peremptorily challenged pursuant to discriminatory criteria, beginning with the requirement that a defendant objecting to a prosecutor's peremptory challenge of a venire member must first establish a prima facie case of purposeful discrimination. We have held:

> To establish a prima facie case for a violation of equal protection due to racial discrimination in the use of peremptory jury challenges by the State, "the defendant first must show that he is a member of a cognizable racial group[4], and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the venireman from the petit jury on account of their race." [Citations omitted.] *Batson v. Kentucky*, 476 U.S. 79 at 96, 106 S.Ct. 1712 at 1722, 90 L.Ed.2d 69 (1986).

Syl. Pt. 2, *State v. Marrs*, 180 W.Va. 693, 379 S.E.2d 497 (1989) (emphasis and footnote supplied). Only upon the making of the prima facie case will the burden shift to the State to offer a race-neutral (or, as this case also entails, gender-neutral) explanation for the challenge.

We have never established a bright-line rule for establishing a prima facie case for discrimination based on nothing more than the dismissal of a venire person who is a member of a protected class. In fact, as set forth above and consistent with *Batson*, we require a showing of "relevant circumstances [that] raise an inference" of discrimination. Petitioner does not allege that his counsel offered any argument in support of his challenge other than "Mr. Gregory is an African American gentleman. . . ." Likewise, there is no evidence that the State failed to strike any other similarly-situated prospective jurors.[5] In the case before us, petitioner has shown only that the State used a peremptory strike to excuse a single African-American male, and has not otherwise shown relevant circumstances raising an inference of discrimination. We find that petitioner did not make a prima facie case of discrimination, either race- or gender-based, during the jury selection process.

---

[4] As explained in note 3, above, the requirement that the defendant and the challenged venire person be members of the same racial group is obsolete.

[5] "In assessing a *Batson* challenge, the trial court must consider a party's assertion that a similarly situated prospective juror was not challenged, both in determining whether the defendant has stated a prima facie case of discrimination, and in deciding whether the explanation given by the prosecution was a pretext for racial discrimination. . . ." Syl. Pt. 13, *State v. Rahman*, 199 W.Va. 144, 483 S.E.2d 273 (1996).

III.

Turning to petitioner's fourth assignment of error—that there was insufficient evidence to support his conviction—we note that

> "[a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. [. . .]" Syl. Pt. 3, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

Syl. Pt. 4, *State v. Messer*, 223 W.Va. 197, 672 S.E.2d 333 (2008).

The charges against petitioner were the result of an altercation that occurred when Nicole Meadows, the mother of petitioner's four-year-old child, brought the child to his residence for visitation. Petitioner testified that he and Ms. Meadows were arguing about child custody issues, that Ms. Meadows threatened that he would not see his child again, and that he, in turn, threatened to have an inspection of her home conducted. According to his testimony, petitioner went indoors to retrieve an electronic cigarette, and Ms. Meadows began to leave with the child. Petitioner testified that he tried to take his daughter, and Ms. Meadows "punched" his face, then attempted to do it again, prompting petitioner to slap her twice. Petitioner testified that he then took his daughter and ran inside, and Ms. Meadows left.

Ms. Meadows, on the other hand, testified that while the two were arguing about custody issues,

> . . . it was like a light switch . . . and he just immediately starts—he just started screaming at me and yelling and just going over the top. . . . And that's when he told me that, no, he was going to get a gun and kill me, and he ran inside. . . . So he ran upstairs, and that's when I got scared.
>
> I ran inside and I grabbed [the child]. I put her on my right hip. She was right here on my hip, and I run for the door, and I can hear him running after me and that's when I hear [the child] start screaming, "Please don't kill my mommy, please don't kill my mommy." And I get to the door, and I go to push it open, and that's when he jumped in front of us, and he's just continuously yelling, and [the child was] screaming and crying, and I didn't know what to do. . . .

5

And the next thing I know, that's when I feel his fist hitting the back of my head over and over and over and over to the point where I couldn't even stand up.

Ms. Meadows testified that petitioner then took the four-year-old inside the house, while she went to a neighbor across the street for help. She then drove herself to the hospital. The investigating officer, Corporal Owen B. Morris of the Charleston Police Department, testified that he spoke to Ms. Meadows at the hospital on the day of the incident and that she was visibly shaken, with knots on her head, but with no visible cuts or bruises.

Though petitioner presented several witnesses tending to establish that Ms. Meadows had a history of violence, including abuse directed toward petitioner, it was clearly possible for a jury to find, based on the evidence presented, guilt beyond a reasonable doubt. In fulfilling our appellate role, we credit all credibility determinations that the jury might have made in favor of the prosecution. In doing so, it is not difficult to believe that the jury credited Ms. Meadows' testimony over that of petitioner, especially in light of the officer's testimony about her demeanor and physical state. We leave these credibility determinations to the jury, and find no error in this regard.

IV.

In his fifth assignment of error, petitioner argues that the magistrate court judge failed to grant petitioner's motion for a mistrial after the complaining witness commented on petitioner's drug possession and use. Petitioner contends that Ms. Meadows made an offending remark in response to questions by petitioner's trial counsel, as follows:

Q:      . . . You're standing on the porch. He is going, you claim, to get a gun. Right?

A:      Yes.

Q:      Obviously, as a wonderful father, he's not going to injure the child, is he?

A:      Well, mercy, I don't know. I didn't think he would ever injure me, either.

Q:      Now, is he going to injure the child, ma'am?

A:      I don't know.

Q:      You don't know.

A:      No.

Q:      You were on the porch, and this raving maniac . . . tells you that he's going to shoot you or whatnot.

6

A:     Yes.

Q:     And you don't leave?

A:     Yes, I do leave with my child.

Q:     No, ma'am. You didn't leave the porch to get in the car, did you?

A:     You can't get off that porch. You have to go through the house to get outside, but yes.

Q:     Did you run through the house?

A:     Yes. I ran into the house, I put [the child] on my hip, and I left because I was scared for our safety, for our lives. He was not himself that evening. I don't know what was wrong with him. I don't know why he was so upset. <u>Maybe it was because of the drugs they found in his closet.</u>

(Emphasis supplied.) Counsel immediately requested a mistrial, and the trial court denied the motion. Counsel then confirmed with the witness that she had no knowledge of petitioner's having taken drugs that day. There was no further mention of petitioner's drug possession at trial. Counsel neither requested a curative instruction at the time Ms. Meadows made the remark, nor offered an instruction for inclusion in the jury charge.

Again, petitioner faces a heavy burden. "The decision to declare a mistrial, discharge the jury, and order a new trial in a criminal case is a matter within the sound discretion of the trial court." Syl. pt. 8, *State v. Davis*, 182 W.Va. 482, 388 S.E.2d 508 (1989). "A trial court is empowered to exercise this discretion only when there is a 'manifest necessity' for discharging the jury before it has rendered its verdict." *State v. Williams*, 172 W.Va. 295, 304, 305 S.E.2d 251, 260 (1983). Petitioner compares his situation to that described in *State v. [Edwin Mack] Taylor*, 215 W.Va. 74, 593 S.E.2d 645 (2004). In that opinion, we described the evidence related to Mr. Taylor's drug use as "considerable," explaining that "the State's 404(b) evidence showed that Mr. Taylor himself was not only a regular user of marijuana but also of such hard drugs as regular and crystal methamphetamine and that he himself stole things in order to support his habit." *Id*. at 79-80, 593 S.E.2d at 650-51. Furthermore the evidence included "a vivid description . . . to the jury of how Mr. Taylor 'st[uck] [crank] on tin foil and use[d] a straw and a lighter and smoke[d] it.'" *Id*. We also noted that the evidence of drug use substantially predated the crime for which Mr. Taylor stood trial. *Id*.

We do not find that the single, isolated reference made by Ms. Meadows—followed, as it was, by her admission that she knew nothing of petitioner's drug use—rises to the level described in *Taylor*, where there were a "considerable" number of clear references to particular, "hard" drugs and "a vivid description" of Mr. Taylor's drug use. The prejudicial effect of Ms. Meadows' statement, if any, would have been easily cured by a limiting instruction, which petitioner did not request, and which the trial court was not required to give sua sponte. *See State*

7

*v. [David E.] Taylor*, 200 W.Va. 661, 666, 490 S.E.2d 748, 753 (1997) *citing State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994). We find no error.

V.

Next, we consider petitioner's sixth assignment of error, wherein he argues that the magistrate court judge admitted improper vouching evidence in violation of Rule 608 of the West Virginia Rules of Evidence in two instances: (1) after Cpl. Morris answered "yes" to the question, posed by the assistant prosecuting attorney on redirect, "[D]id you find the victim in this matter who you spoke with, did you find her to be trustworthy?" and (2) when the officer affirmed, in response to the prosecutor's question, that he found Ms. Meadows' story "consistent." An objection was made (and overruled) in the first instance, but no objection was made in the second. We consider the effect only of the earlier statement, in light of petitioner's failure to challenge the latter. *See* Syl. Pt. 4, *PNGI Charles Town Gaming, LLC v. Reynolds*, 229 W.Va. 123, 727 S.E.2d 799 (2011)("'A litigant may not silently acquiesce to an alleged error . . . and then raise that error as a reason for reversal on appeal.' Syl. Pt. 1, in part, *Maples v. W.Va. Dep't of Commerce, Div. of Parks and Recreation*, 197 W.Va. 318, 475 S.E.2d 410 (1996).")[6]

We consider, then, if the trial court wrongly permitted the State to inquire of the investigating officer whether he found the complaining witness to be "trustworthy." In doing so, we recognize that "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 3, *State v. Larry M.*, 215 W.Va. 358, 559 S.E.2d 781 (2004). Respondent argues that petitioner attacked the officer's investigation, and then attacked the veracity of Ms. Meadows' report to the officer when counsel asked whether Ms. Meadows informed the officer about prior occasions during which she abused petitioner. In sum, respondent argues that the officer's testimony in this regard "was purely intended to show that, throughout the course of his investigation, he had no reason to doubt the victim, based upon her injuries and what she reported."

The trial court did not permit improper bolstering when it allowed Cpl. Morris to testify regarding his assessment of the report made by Ms. Meadows. The defense had placed Ms. Meadows' credibility in issue by insinuating that Ms. Meadows had engaged in violent behavior toward petitioner in the past, and failed to apprise the officer of this behavior. Under the unique and limited circumstances now before us, defense counsel's suggestion constituted an attack on the character of Ms. Meadows, and the officer's testimony amounted to appropriate rehabilitative evidence. We find no error.

---

[6] In deeming this issue waived, we specifically find that the issue does not require application of the plain error doctrine. "The plain error doctrine of W.Va.R.Crim.P. 52(b), whereby the court may take notice of plain errors or defects affecting substantial rights although they were not brought to the attention of the court[.]" Syl. Pt. 4, in part, *State v. Grubbs*, 178 W.Va. 811, 364 S.E.2d 824 (1987). The plain error doctrine is reserved for only the most egregious errors. "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

## VI.

In his seventh assignment of error, petitioner asserts that he was prejudiced by the magistrate court's failure to enforce its own order for the disclosure of disciplinary records of the investigating officer and to order production of the juvenile record of the complaining witness. Petitioner asserts, with no citation whatsoever to the appendix record on appeal, that "the trial court ordered the production of the police officer's disciplinary records. . . . Similarly, there was no disclosure of the State's witness'[s] juvenile records. . . ." We address each of these allegations in turn.

First, there is no citation to the appendix record to explain what relief petitioner sought below with regard to his request for the investigating officer's disciplinary records or, for that matter, any of the circumstances surrounding this request. Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that arguments "contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal." Given that the basis of petitioner's assignment of error with respect to the investigating officer is unclear from the record before us, and that petitioner has not refuted respondent's assertion that there was no "indication that Cpl. Morris had relevant, admissible, impeachment evidence contained within his employment records," petitioner has failed to satisfy his burden and we find no error.

We turn, then, to the second part of petitioner's assignment of error, concerning the alleged juvenile history of witness Nicole Meadows. Petitioner offers no citation to the appendix record on appeal to show that he requested information about Ms. Meadows' criminal history or if, in fact, she had such history. We note, though, that it appears such a request was made through discovery, pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963), which prohibits the State's suppression of material and favorable evidence.[7] We thus refer to this issue as petitioner's *Brady* claim, for which the elements are as follows: "'The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" *Banks v. Dretke*, 540 U.S. 668, 691, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004) (*quoting Strickler v. Greene*, 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)). In evaluating the *Brady* elements, we begin and end by observing that petitioner has failed to present any evidence raising even an inference of the existence of a juvenile criminal record for Ms. Meadows.[8] As such, we do not find that there was

---

[7] Again, however, there is no indication that petitioner pursued this matter with the trial court.

[8] We further point out that the records at issue are subject to specific limitations and it is questionable whether the State could have provided the records or whether petitioner could have obtained them. Juvenile records are confidential, are not public, and are available upon request only as authorized by statute. W.Va. Code § 49–5–17 (2014). According to the incident report contained in the magistrate court file, Ms. Meadows was twenty-four years old at the time of the

evidence favorable to petitioner that was suppressed by the State, and we certainly find no prejudice. Petitioner has not met his burden on appeal.

## VII.

Finally, having found no error, we reject petitioner's eighth and final assignment of error in which he argues that he was denied his right to a constitutionally fair trial based upon cumulative error. *See* Syl. Pt. 5, *State v. Smith*, 156 W.Va. 385, 193 S.E.2d 550 (1972) (holding that "[w]here the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error .").

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** April 10, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

---

offense that is the subject of this appeal. The juvenile record, if any, of Ms. Meadows was likely expunged when she turned nineteen years old, and would have been "sealed by operation of law, . . . not to be opened except upon order of the circuit court." W.Va. Code § 49-5-18(b) and (d) (2009). Inasmuch as we have no reason to think otherwise, we presume that if ever documents responsive to petitioner's discovery request existed, they no longer did at the time of petitioner's request. Furthermore, petitioner has not acknowledged the significance of the passage of time—and likely sealing of any records—in this case. "Sealing of juvenile records has the legal effect of extinguishing the offense as if it never occurred." W.Va. Code § 49-5-18(e) (2009). We need not consider this issue now, but we observe that it may prove difficult to impeach a non-defendant witness with records of an "offense . . . [that] never occurred." *See, e.g., Commonwealth v. Santos*, 376 Mass. 920, 384 N.E.2d 1202 (Mass. 1978)("We hold, therefore, that a sealed record may not be used to impeach credibility generally, but may be used only in cases in which it bears directly on the witness's bias or motive"); *State v. Jones*, 581 P.2d 141 (Utah 1978)(Statute providing that individual whose record is expunged may "respond to any inquiries relating to convictions of crimes as though that conviction never occurred" prohibited impeachment using such a record).